IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARISSA JOSIAH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 18-0004 |
| | * | |
| ADVANCED BEHAVIORAL HEALTH, INC., | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this employment discrimination case is Defendant Advanced Behavioral Health, Inc.'s motion to dismiss, or alternatively for summary judgment, under Federal Rules of Civil Procedure 12(b)(6) and 56 respectively. *See* ECF No. 4. The matter has been fully briefed, and the Court now rules because no hearing is necessary. *See* Loc. R. 105.6. For the reasons below, Defendant's motion is DENIED.

**I.     BACKGROUND**

The following facts are taken from the Complaint and accepted as true for purposes of this motion. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). From 2012 through her termination in 2017, Plaintiff Marissa Josiah ("Josiah") worked for Advanced Behavioral Health, Inc. ("ABH"), an outpatient mental health center with locations in Baltimore, Greenbelt, and Frederick, Maryland, with its principal place of business in Gaithersburg, Maryland. ECF No. 1 at ¶¶ 8–9, 16. Josiah is a certified trauma therapist with a Master's Degree in Counseling from Loyola University in Maryland, and is currently working on obtaining her Ph.D. in the same field. ECF No. 1 at ¶¶ 11–12. Josiah also belongs to the National Honors Society for

1

Psychology, the American Counseling Association, and the National Board of Certified Counselors. ECF No. 1 at ¶ 13.

Josiah began her career in 2006 as the lead foster care therapist for Catholic Charities. ECF No. 1 at ¶ 14. Then in 2007, Josiah moved to Sheppard Pratt Hospital, where she worked as a therapist until ABH hired her in 2012. ECF No. 1 at ¶¶ 14–16. During her tenure at ABH, Josiah received several promotions. By 2015, Josiah was promoted to Regional Director and thereafter Assistant Clinic Director. ECF No. 1 at ¶ 22. In June 2015, ABH began training Josiah for the position of Program Director. ECF No. 1 at ¶ 24. If Josiah had become Program Director, she would have received a roughly $40,000 annual increase in compensation. ECF No. 1 at ¶ 28.

Throughout Josiah's tenure at ABH, Director Stephen Green ("Green") made inappropriate comments about African-Americans in Josiah's presence, and specifically targeted African-American women for adverse treatment. ECF No. 1 at ¶ 20. For example, Green complained that white people should have more babies, rather than African American women, and referred to an African-American employee as "Sista." ECF No. 1 at ¶ 20. Similarly, ABH's Executive Director, Karen Ropp ("Ropp"), complained that the high turnover in administrative staff was because the staff members were poor, pregnant, and having children out of wedlock. ECF No. 1 at ¶ 21. Ropp also told Josiah that Ropp had worked while pregnant, and both Ropp and Green made clear to Josiah that the use of maternity leave was disfavored. ECF No. 1 at ¶¶ 20–21.

Josiah was married in September 2015. ECF No. 1 at ¶ 25. In May 2016, a month before Josiah's promotion to Program Director was to take effect, Green and Ropp informed Josiah that she would not become Program Director after all. The reason given for the change was that

Josiah's recent marriage led Ropp and Green to anticipate that Josiah would soon begin having children.  ECF No. 1 at ¶ 27.  Even though Josiah was denied the promotion and commensurate pay increase, ABH nonetheless required Josiah to perform the Program Director's job duties, and reported Josiah to be the Program Director to the state of Maryland.  ECF No. 1 at ¶¶ 28–29.

Denying Josiah the Program Director position was the first in a series of adverse employment actions ABH took against her.  ECF No. 1 at ¶ 30.  In July 2016, ABH changed its fee structure in a way that disparately impacted Josiah as compared to other Regional Directors, and as a result, she suffered a $20,000 reduction in annual pay.  ECF No. 1 at ¶¶ 33–34.  The same month, ABH assigned a new employee to report to Josiah pursuant to the "TNI@Schools Program," and because of this assignment, ABH deducted from Josiah's salary a portion of the new employee's salary.  ECF No. 1 at ¶ 37.  When Josiah complained, ABH removed her from this program, replaced Josiah with a Caucasian woman, and did not deduct the cost of the new hire from the Caucasian woman's pay, as ABH had done to Josiah.  ECF No. 1 at ¶¶ 39–40.

In December 2016, ABH assigned Josiah two "Assistant Area Directors," again a portion of whose salary was deducted from Josiah's salary, and even though the new hires were actually supervised by Green.  ECF No. 1 at ¶ 46.  Josiah was the only Regional Director who personally bore some of the cost associated with employing two Assistant Area Directors.  ECF No. 1 at ¶¶ 41–46.

In January 2017, Josiah informed ABH that she was pregnant and due in May of 2018.  ECF No. 1 at ¶ 47.  Green asked Josiah whether she was going to name her baby "Mercedes" like other African-American women.  ECF No. 1 at ¶ 20.  At the time, ABH did not have a formal leave policy for Regional Directors, and so customarily Regional Directors took time off as each saw fit.  ECF No. 1 at ¶¶ 48–49.  On February 21, 2017 ABH announced a new paid time

3

off policy, which Ropp stated was crafted expressly for Josiah. ECF No. 1 at ¶ 50. Under the new policy, ABH gave Josiah only nine days of maternity leave. ECF No. 1 at ¶ 51. Further, in late February 2017, Josiah received a performance evaluation which noted five areas that needed improvement. ECF No. 1 at ¶ 52.

On March 17, 2017, Josiah filed her Charge with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged that ABH had discriminated against her on account of her race and sex. ECF No. 1 at ¶ 53; ECF No. 4-2. On March 29, 2017, Josiah informed ABH that she had filed an EEOC Charge. ECF No. 1 at ¶ 53. ABH, in response, began scrutinizing her work more closely than other employees, manufacturing performance problems, and issuing baseless reprimands. ECF No. 1 at ¶ 54. Josiah had never been disciplined prior to filing the EEOC Charge. ECF No. 1 at ¶ 54.

On April 21, 2017, ABH put Josiah on a performance improvement plan ("PIP"). ECF No. 1 at ¶ 54. In a meeting purportedly about Josiah's PIP, Ropp asked Josiah about the EEOC Charge, which Josiah refused to discuss without her attorney. ECF No. 1 at ¶ 55. Five days after the PIP meeting, on April 26, 2017, ABH issued Josiah a written warning about her job performance. This written warning was the first written reprimand Josiah had received in her five years with ABH. ECF No. 1 at ¶ 58. On April 27, Josiah received another written warning. ECF No. 1 at ¶¶ 60–61, 77. The conduct alleged in both written warnings was, according to Josiah, completely fabricated. ECF No. 1 at ¶¶ 59, 61.

Josiah grew increasingly fearful that her stress at work could adversely affect her pregnancy, and so she began her maternity leave early, on April 27, 2017. ECF No. 1 at ¶ 62. Josiah returned from maternity leave about three months later, on July 25, 2017, and was immediately suspended for failing to respond to a text while on maternity leave. ECF No. 1 at ¶

64.  ABH asked Josiah to return all company equipment while on suspension.  ECF No. 1 at ¶ 65.  Josiah, in response, went to an ABH office to disconnect her cell phone, at which time Green, Ropp and a representative from the Human Resources Department entered the room, shut the door, and refused to reopen it, causing Josiah to fear for her safety.  ECF No. 1 at ¶ 65.  A little over a week later, on August 2, 2017, ABH terminated Josiah. ECF No. 1 at ¶ 66.

On September 28, 2017, the EEOC issued Josiah a right to sue letter.  ECF No. 1 at ¶ 2.  Josiah filed her Complaint in this Court on January 2, 2018, alleging violations of Title VII, 42 U.S.C. § 1981(a), and the Pregnancy Discrimination Act.  *See* ECF No. 1.  Josiah seeks damages for her emotional anguish, pain and suffering, injury to her professional standing and reputation, as well as stress-related complications during the labor and delivery of her daughter.  ECF No. 1 at ¶ 67.  ABH now moves to dismiss for failure to state a claim, or alternatively, for Summary Judgment.  *See* ECF No. 4-1.

II.    STANDARD OF REVIEW

   A.  **Whether to Treat ABH's Motion as one for Dismissal or Summary Judgment**

For the most part, ABH seeks summary judgment in its favor and has submitted substantial record evidence outside the four corners of the Complaint for this Court's consideration.  *See* ECF No. 4.  ABH's requests are premature, and for the following reasons, will be deferred until discovery can be taken.

The Court retains "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  *Kelly v. Lease*, No. RDB-16-3294, 2017 WL 2377795, at *1 (D. Md. May 31, 2017) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

5

1366 (3d ed. 2004, 2011 Supp.)); *accord Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary. *Sager*, 855 F. Supp. 2d at 542 (quoting *Federal Practice and Procedure* § 1366).

Ordinarily, summary judgment is inappropriate without the opportunity for "reasonable discovery." *Id.* (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011)). "The party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

Typically, a non-movant may establish the need for discovery by filing an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. In the affidavit, the non-movant must show why, "for specified reasons, it cannot present facts essential to justify its opposition," absent discovery. Fed. R. Civ. P. 56(d). A "non-movant must provide a 'reasonable basis to suggest that [the requested] discovery would reveal triable issues of fact,'" *Agelli v. Sebelius*, No. DKC-13-497, 2014 WL 347630, at *9–*11 (D. Md. Jan. 30, 2014) (quoting *McWay v. LaHood*, 269 F.R.D. 35, 38 (D.D.C. 2010).

This case is in its infancy. The Court has yet to issue a scheduling order and no formal discover has ensued. Expectedly, Josiah has submitted a Rule 56(d) affidavit arguing that "reasonable discovery" is necessary. *See* ECF No. 5-5. Josiah's 56(d) affidavit identifies with

6

particularity documents in ABH's possession that are necessary to advance Josiah's case, to include documents concerning compensation and responsibilities of Josiah's named comparators, as well as any other unnamed comparators not yet discovered; records of ABH's disciplinary actions against Josiah compared to other employees; ABH's leave policies and the company's decision to institute new policies shortly after Josiah became pregnant; correspondence between Green and Ropp concerning Josiah's performance; and additional internal records and depositions of ABH management, to include Green and Ropp. ECF No. 5-5 at ¶¶ 4, 5. This affidavit is sufficient to defeat considering the motion as one for summary judgment.[1] The Court will review the motion as one to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

b.  **Motion to Dismiss Standard of Review**

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded allegations are accepted as true and viewed most favorably to plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].' " *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line

---

[1] Josiah's 56(d) affidavit also correctly notes that "[c]ourts must take special care when considering a motion for summary judgment in an employment discrimination case because 'motive often is the critical issue.' " ECF No. 5-5 at 3, citing *Derrickson v. Circuit City Stores*, 84 F. Supp. 2d 679, 684 (D. Md. 2000) (quoting *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987)); *see also Chernova v. Electronic Sys. Serv., Inc.*, 247 F. Supp. 2d 270 (D. Md. 2003) (declining to convert the motion to dismiss into summary judgment in an employment discrimination case); *Navarrete v. Miller & Long Co., Inc.*, No. PWG-13-1362, 2013 WL 6036840, at *3 (D. Md. Nov. 13, 203) (same). Given the facts as pleaded in the Complaint, discovery is, at a minimum, necessary as to ABH's proffered reasons for terminating Josiah's employment. *See* ECF Nos. 4 & 5.

between possibility and plausibility of entitlement to relief.' " *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

### III. ANALYSIS

Josiah asserts claims of race, color, sex, pregnancy discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2(a) ("Title VII"), and Title 20 of the Maryland State Government Article. *See* ECF No. 1. Title VII requires a plaintiff file a "charge" of discrimination with the EEOC or appropriate state agency before filing in court. 42 U.S.C. § 2000e-5(e)(1). If the EEOC dismisses the charge, a plaintiff has ninety days thereafter to file an action in court, and the plaintiff's suit is generally limited to the grounds asserted in the underlying EEOC charge. 42 U.S.C. §2000e-5(f)(1); *Jones v. Calvert Group, Ltd.* 551 F.3d 297, 300 (4th Cir. 2009). ABH moves to dismiss the Complaint for failure to exhaust her administrative remedies, arguing that Josiah did not file her Complaint in a timely manner and that Josiah's EEOC Charge did not include any allegations regarding retaliation. *See* ECF No. 4-1 at 15. The Court addresses each argument in turn.

Under Title VII, a plaintiff may file suit within ninety days after receipt of an EEOC right-to-sue notice. *See* 42 U.S.C. § 2000e–5(f)(1). "Timeliness of Plaintiff's filing in this Court is akin to a statute of limitations defense properly reviewed under Rule 12(b)(6)." *Fletcher v. Carter*, No. CV PX 15-3897, 2017 WL 876485, at *7 (D. Md. Mar. 6, 2017). Taking the facts asserted in the Complaint as true, the EEOC issued Josiah a right-to-sue notice on September 28, 2017. ABH argues that the clock began to run at this time, meaning that Josiah was required to file all Title VII claims on or before December 27, 2017. ECF No. 4-1 at 19–20. However, "the limitations period starts when the right-to- sue- letter is *delivered* to the plaintiff's home," not when it is issued. *See Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 696 (D. Md. 2017)

(citing *Harvey v. City of New Bern Police Dep't*, 813 F.3d 652, 654 (4th Cir. 1987)) (emphasis added). "If there is no evidence regarding when the plaintiff received the right-to-sue letter, the court presumes receipt three days after it was mailed, pursuant to Federal Rule of Civil Procedure 6(d)." *Id.*; *see also Crabill v. Charlotte Mecklenburg Bd. of Educ.,* 423 F. App'x 314, 321 (4th Cir. 2011) (noting that "for constructive receipt purposes, courts presume a mailing reaches the intended recipient within three days") (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n. 1 (1984)). Therefore, even by the most conservative estimate, and without reference to evidence beyond the four corners of the Complaint, the law presumes that Josiah received the notice on October 2, 2017. *See Crabill*, 424 F. App'x at 321; ECF No. 1 at ¶ 2.[2] Ninety days after October 2, 2017 fell on Sunday, December 31, 2017, and the following day, January 1, 2018, was a federal holiday. Thus, under Federal Rule of Civil Procedure 6(a), Josiah had until close-of-business on January 2, 2018 to file all claims timely. Fed. R. Civ. P. 6(a) (stating that the filing period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday). Josiah's Complaint was filed on January 2, 2018, and thus was timely. *See* Fed. R. Civ. P. 6(e).

As to whether Josiah's retaliation claim (Count III) was within the scope of the EEOC Charge, this Court has long held retaliation may be raised for the first time in federal court, particularly where, as here, the claimed retaliation arises from the filing of the EEOC Charge. *See, e.g. Jones*, 551 F.3d at 301–04 (citing *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992) (internal citations omitted); *Garnes v. Maryland¸* No. RDB-17-1430, 2018 WL 276425, at *5 (D. Md. Jan. 3, 2018) (citing *Jones*, 551 F.3d at 302); *Bales v. Md. Judiciary/Admin. Office of the*

---

[2] Josiah attaches the envelope in which the notice was sent, reflecting a postmark of October 2, 2017, *see* ECF No. 5-11, and further asserts that she did not actually receive the notice until October 11, 2017. Under the earlier date of presumptive receipt, Josiah's Complaint is timely filed.

9

*Courts*, 2016 WL 6879902, at *8–9 (D. Md. Nov. 22, 2016). Accordingly, ABH's motion to dismiss the retaliation claim is DENIED.

## IV. CONCLUSION

For the foregoing reasons, it is this 30th day of July, 2018, ORDERED by the United States District Court for the District of Maryland:

1. Defendant ADVANCED BEHAVIORAL HEALTH, INC.'s motion to dismiss or for summary judgment, ECF No. 4, is DENIED;

2. ABH shall have fourteen (14) days from the issuance of this Memorandum Opinion and Order to answer the Complaint. A scheduling order shall thereafter issue;

3. The Clerk is DIRECTED to transmit copies of this Memorandum Opinion and Order to the parties.

| | |
|---|---|
| 7/30/2018 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |